UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 cv 00253

| | |
|---|---|
| ANDREW F. ROSE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ACA CAPITAL HOLDINGS, INC. and ALAN S. ROSEMAN,<br><br>Defendants. | Civil Action No.<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

RECEIVED JAN 11 2008 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff, Andrew F. Rose ("Plaintiff"), alleges the following based upon the investigation undertaken by Plaintiff's counsel, which included, among other things, analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about ACA Capital Holdings, Inc. ("ACA Capital" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company, and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a Class consisting of all persons other than Defendants who purchased or otherwise acquired the common stock of ACA Capital from November 2, 2006 through November 20, 2007, inclusive (the "Class Period"), including purchasers who purchased shares pursuant and/or traceable to the Company's initial public offering on or about November 10, 2006 (the "IPO" or the "Offering") seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act

of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o) and under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.  This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v) and pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. §§ 1331.

4.  Venue is proper in this District pursuant to Section 22 of the Securities Act and pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). The acts and conduct complained of herein occurred in substantial part in this District.

5.  In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the New York Stock Exchange ("NYSE"), a national securities exchange.

## PARTIES

6.  Plaintiff Andrew F. Rose purchased ACA Capital common stock during the Class Period, as set forth in the certification attached hereto and incorporated herein by reference, pursuant and/or traceable to the Company's IPO, and was damaged thereby.

7.  Defendant ACA Capital is a holding company that provides financial guaranty insurance products to participants in the global credit derivative, structured finance capital, and municipal finance capital markets.

8. Defendant Alan S. Roseman ("Roseman") served as President and Chief Executive Officer of ACA Capital. Roseman signed the Registration Statement for the IPO.

## SUBSTANTIVE ALLEGATIONS

### False and Misleading Statements

9. Defendant ACA Capital is a holding company that provides financial guaranty insurance products to participants in the global credit derivative, structured finance capital, and municipal finance capital markets. The Company also provides asset management services to specific segments of the structured finance capital markets.

10. The Class Period begins on November 2, 2006, when ACA Capital filed with the SEC a Form S-1/A Registration Statement (the "Registration Statement"), for its IPO.

11. On or about November 9, 2006, ACA Capital priced the IPO of 6,875,000 shares of newly issued common stock and 23,541 shares of existing common stock for $13 per share generating gross proceeds of $89.4 million. The Company's common stock commenced trading on the NYSE on November 10, 2006. In connection with the IPO, the Company's senior convertible preferred stock, convertible preferred stock and Series B senior convertible preferred stock all converted to common stock concurrently at their conversion ratios of 6,000:1 shares, 6,000:1 shares and 6:1 shares, respectively.

12. Shortly thereafter, the Prospectus with respect to the IPO (the "Prospectus"), which forms part of the Registration Statement, became effective and, including the exercise of the over-allotment, more than 6.8 million shares of ACA Capital's common stock were sold to the public at $13.00 per share, thereby raising more than $89 million.

13. The Registration Statement and Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading,

3

and was not prepared in accordance with the rules and regulations governing its preparation.

14.  The Registration Statement positively described ACA Capital's business stating in pertinent part as follows:

> ACA Capital is a holding company engaged in the business of providing financial guaranty insurance products to participants in the global credit derivatives markets, structured finance capital markets and municipal finance capital markets. We also provide asset management services to specific segments of the structured finance capital markets. We participate in our target markets both as a provider of credit protection through the sale of financial guaranty insurance products, for risk-based revenues, and as an asset manager, for fee-based revenues. We conduct our financial guaranty insurance businesses through ACA Financial Guaranty Corporation, our "A" rated, regulated insurance subsidiary. We conduct our asset management business through ACA Management, L.L.C., a subsidiary of ACA Financial Guaranty. As of June 30, 2006, we had insured credit exposure of $31.4 billion and our assets under management for third parties were $12.1 billion. For the six months ended June 30, 2006, we had total revenues of $215.3 million and net income of $26.2 million. As of June 30, 2006, our stockholders' equity was $412.7 million.

15.  The Registration Statement positively described the Company's collateralized debt obligations ("CDO") asset management business stating in pertinent part as follows:

> We serve as an asset manager of collateralized debt obligations, or CDOs. A CDO is a securitization of fixed income assets such as bonds, loans, asset backed securities, or ABS, and credit default swaps, or credit swaps. To grow our assets under management, we sponsor CDOs that acquire pools of fixed-income assets that we select and manage. CDO assets are funded by the issuance of various liabilities with credit profiles ranging from "AAA" rated debt to non-rated equity. Our CDOs have a diverse worldwide institutional investor base that includes banks, money managers, non-bank financial institutions, hedge funds, pension funds and insurance companies.

> Our CDO Asset Management revenues consist of asset management fees and risk-based revenue in the form of return on our equity investments in our CDOs. Typically, we invest in some portion of the equity of our managed CDOs, currently between 5% to 25% of the total equity offered. These investments increase the marketability of our CDOs by aligning our interests as asset manager with those of our CDO investors and thereby maximizing our CDO assets under management. In 2005 and the first six months of 2006, we invested a total of $16.0 million and $2.9 million, respectively, in the equity of our CDOs while increasing our assets under management by $2.1 billion and $2.2 billion, respectively. We completed our first CDO in January 2002 and, as of June 30, 2006, we had closed 17 CDO transactions

and have grown our CDO assets under management from $2.4 billion as of year-end 2002 to $12.1 billion as of June 30, 2006. At June 30, 2006, our weighted average asset management fee was 0.21% per annum on CDO assets under our management. Based on our knowledge of the market, we believe we are one of the largest global CDO managers as ranked by assets under management.

16. The statements referenced above in ¶¶ 20 and 21 were inaccurate statements of material fact because they failed to disclose that the Company's CDO assets were materially impaired and overvalued. Indeed, under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the Prospectus was required to disclose that the Company's CDO assets were materially impaired and overvalued.

**The Truth Begins to Emerge**

17. On July 16, 2007, Credit Suisse Group analysts Craig Siegenthaler and Thomas Gallagher issued a research report indicating that ACA Capital had $4.5 billion in exposure to mortgages to bad-credit borrowers from 2006 and 2007, through its holdings in CDOs. According to the report, ACA Capital had another $400 million in exposure to CDO bonds.

18. As a result of this news, shares of ACA Capital fell approximately 19%, from $8.46 to $6.59, in heavy trading.

19. On July 31, 2007, ACA Capital posted a net loss of $93.3 million, or $2.55 per share, for the second quarter of 2007. The loss was the result of impairment losses on bonds in certain consolidated CDOs and net unrealized mark-to-market losses on the Company's portfolio of structured credit transactions involving second-lien and subprime residential mortgages.

20. On or about August 6, 2007, Barron's announced that ACA Capital shares could fall further due to events in the subprime mortgage market. In particular, Barron's announced that the tranches comprising ACA Capital's CDOs consisted of risky, "triple-B slices" of the mortgage-backed securities pools, which are far less protected from loss. Barron's estimated the

Company's exposure at as much as $9.3 billion.

21.   The price of ACA Capital stock continued to fall throughout September and October 2007. On November 7, 2007, ACA Capital reported a $1.1 billion mark-to-market loss on the value of its credit portfolio. The markdown led to a third-quarter net loss of $1.04 billion, or $29.42 per share.

22.   One week later, on November 14, 2007, the Company announced that it would delay filing its third-quarter earnings report with the U.S. Securities and Exchange Commission.

23.   On November 19, 2007, the Company filed a 10Q with the SEC for the quarter ended September 30, 2007. In its 10Q and in a press release issued after the market closed, the Company announced the full extent of its collateralized debt impairment, namely the high likelihood that as a result of the Company's recent financial performance, its credit rating would be cut and it would be unable to post collateral on various debt obligations. On November 20, 2007, as a result of this news, the price of the Company's stock fell to $1.10 per share, its lowest yet.

24.   News reports continued to worsen. On November 20, CNBC reported that the Company had $25 billion of exposure to CDOs with unstable credit ratings. On November 21, 2007, JPMorgan Chase & Co. analyst Andrew Wessel reported in an interview that ACA Capital would likely be "thrown to the wolves" when its credit rating was cut, forcing banks to take on $60 billion in CDOs. Later the same day, the first complaint was filed in the U.S. District Court for the Southern District of New York alleging the Company misled purchasers in its IPO.

35.   At the time this complaint was filed, the Company's shares were trading at $0.60.

## CLASS ACTION ALLEGATIONS

26.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

6

Procedure 23(a) and 23(b)(3) on behalf of himself and all persons other than defendants who purchased the common stock of ACA Capital during the Class Period, including those who purchased shares pursuant and/or traceable to the Company's IPO. Excluded from the Class are defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which defendants have a controlling interest or which is related to or affiliated with defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

27.  The members of the Class are so numerous that joinder of all members is impracticable. ACA Capital sold more than 6.8 million shares of common stock in its IPO alone. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of ACA Capital or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

28.  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

29.  Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

30. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) Whether the prospectus and registration statement issued by defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about ACA Capital and its business;

(c) The extent of injuries sustained by members of the Class; and

(d) The appropriate measure of damages.

## LOSS CAUSATION

32. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

33. During the Class Period, Plaintiff and the Class purchased securities of ACA Capital at artificially inflated prices and were damaged thereby. The price of ACA Capital's securities significantly declined when the misrepresentations made to the market, and/or the effects thereof, were revealed, causing investors' losses.

8

## SCIENTER ALLEGATIONS

34. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding ACA Capital, their control over, and/or receipt and/or modification of ACA Capital's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning ACA Capital, participated in the fraudulent scheme alleged herein.

35. During the Class Period, and with the Company's shares trading at artificially-inflated levels, the Company successfully completed an initial public offering, selling more than 6.8 million shares of ACA Capital common stock to the public at $13.00 per share and raising more than $89 million.

## NO SAFE HARBOR

36. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the

extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements, because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of ACA Capital who knew that those statements were false when made.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

37.  Plaintiff repeats and realleges each and every allegation contained above.

38.  This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

39.  The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

40.  ACA Capital is the registrant for the IPO. The defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

41.  As issuer of the shares, ACA Capital is strictly liable to Plaintiff and the Class for the misstatements and omissions.

42.  None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

43.  By reasons of the conduct herein alleged, each defendant violated, and/or

controlled a person who violated, Section 11 of the Securities Act.

44. Plaintiff acquired ACA Capital shares pursuant to the Registration Statement.

45. Plaintiff and the Class have sustained damages. The value of ACA Capital common stock has declined substantially subsequent to and due to defendants' violations.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

46. Plaintiff repeats and realleges each and every allegation contained above.

47. This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

48. Defendants were sellers and offerors and/or solicitors of purchasers of the shares offered pursuant to the Prospectus.

49. The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein. Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectus and participating in road shows to market the IPO to investors.

50. Defendants owed to the purchasers of ACA Capital common stock, including Plaintiff and other class members, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Prospectus contained therein, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants in the exercise of reasonable care should have known of the misstatements and omissions contained in the IPO materials as set forth above.

51. Plaintiff and other members of the Class purchased or otherwise acquired ACA Capital common stock pursuant to and/or traceable to the defective Prospectus. Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Prospectus.

52. Plaintiff, individually and representatively, hereby offers to tender to defendants those securities which plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon. Class members who have sold their ACA Capital common stock are entitled to rescissory damages.

53. By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated, § 12(a)(2) of the Securities Act. Accordingly, Plaintiff and members of the Class who hold ACA Capital common stock purchased in the IPO have the right to rescind and recover the consideration paid for their ACA Capital common stock and hereby elect to rescind and tender their ACA Capital common stock to the defendants sued herein. Plaintiff and Class members who have sold their ACA Capital common stock are entitled to rescissory damages.

## COUNT III

### Violations of Section 15 of the Securities Act
### Against Defendant Roseman

54. Plaintiff repeats and realleges each and every allegation contained above.

55. This Count is brought pursuant to Section 15 of the Securities Act against Defendant Roseman.

56. Defendant Roseman was a control person of ACA Capital by virtue of his position as a director and senior officer of ACA Capital.

57. Defendant Roseman was a culpable participant in the violations of Sections 11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on his having signed the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## COUNT IV

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants

58. Plaintiff repeats and realleges each and every allegation contained above.

59. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase ACA Capital securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

60. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for ACA Capital's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

61. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about ACA Capital's

financial well-being, business relationships, and prospects, as specified herein.

62. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of ACA Capital's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about ACA Capital and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of ACA Capital securities during the Class Period.

63. Defendant Roseman's primary liability, and controlling person liability, arises from the following facts: (i) Defendant Roseman was a high-level executive and director at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) Defendant Roseman, by virtue of his responsibilities and activities as a senior officer and director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) Defendant Roseman enjoyed significant personal contact and familiarity with, was advised by, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) Defendant Roseman was aware of the Company's dissemination of information to the investing public which he knew or recklessly disregarded was materially false and misleading.

64. The defendants had actual knowledge of the misrepresentations and omissions of

material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing ACA Capital's financial well-being, business relationships, and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

65.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of ACA Capital securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of ACA Capital's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired ACA Capital securities during the Class Period at artificially high prices and were damaged thereby.

66.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the

problems that ACA Capital was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their ACA Capital securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

67. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

68. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT V

### Violations of Section 20(a) of the Exchange Act Against Defendant Roseman

69. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70. Defendant Roseman acted as a control person of ACA Capital within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level positions, and his ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Defendant Roseman had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Defendant Roseman was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly

16

after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.     In particular, Defendant Roseman had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72.     As set forth above, ACA Capital and Defendant Roseman each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in the Complaint. By virtue of his positions as a control person, Defendant Roseman is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other member of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of itself and the Class, prays for judgment as follows:

A.      declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.      awarding plaintiff and other members of the Class damages together with interest thereon;

C.      with respect to Count II, ordering that the IPO be rescinded;

D.      awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

E.      awarding plaintiff and other members of the Class such other and further relief as

may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 11, 2008

Respectfully submitted,

COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.

By: *[signature]*
Lynda J. Grant (LG-4784)
Catherine A. Torell (CT-0905)
150 E. 52nd St., 30th Floor
New York, NY  10022
(212) 838-7797

Steven J. Toll
S. Douglas Bunch
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
(202) 408-4600

## CERTIFICATION OF PLAINTIFF
### PURSUANT TO FEDERAL SECURITIES LAWS

I, **ANDREW F. ROSE**, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1. I have reviewed a class action complaint asserting securities claims against ACA Capital and wish to join as a plaintiff retaining Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as my counsel.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transactions in ACA Capital Holdings, Inc. ("ACA Capital") (NYSE:ACA - News) pursuant and/or traceable to the Company's initial public offering ("IPO") on or about November 10, 2006 are as follows:

| DATE | TRANSACTION (buy/sell) | NO. OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 8/17/07 | BUY | 400 | 6.9 |

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in any action under the federal securities laws except as follows:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this **24** Day of **DEC**, 200**7**.

*Andrew F. Rose*